UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD L. BAUD & MARLENE BAUD,

    Appellants,

v.

KRISPEN S. CARROLL,

    Appellee.

                                       /

Case No. 09-10673

Honorable Nancy G. Edmunds

**OPINION AND ORDER REVERSING BANKRUPTCY COURT'S FEBRUARY 14, 2009 ORDER CONFIRMING PLAN**

This is an appeal from the Bankruptcy Court's February 14, 2009 order confirming Richard and Marlene Baud's amended Chapter 13 plan. For the reasons set forth below, the Bankruptcy Court's order is REVERSED.

**I.    Facts and Procedural Background**

The parties do not dispute the facts relevant to this appeal. On September 26, 2008, Debtors Richard and Marlene Baud filed a joint petition for relief under Chapter 13 of the Bankruptcy Code. On October 13, 2008, they filed Schedules I and J showing their current monthly income and expenses. Schedule I listed a combined average monthly gross income of $9115.63, comprised of the debtor's salary and the debtor spouse's social security income, and a monthly income of $5348.73 after payroll deductions. Schedule J listed monthly expenses of $4946.41. Subtracting total monthly expenses from monthly income left Debtors with a monthly net income of $402.32. Debtors also filed Form 22C, which required them to calculate their average monthly income for the six months

preceding the filing of their bankruptcy petition. Form 22C shows an average monthly income of $7086.72 and an annualized income of $85,040.64.

Because Debtors' annual income exceeded the state median income for a family of two, Debtors checked the box on Form 22C indicating that their applicable commitment period is 5 years. As above-median debtors, they were required pursuant to 11 U.S.C. § 1325(b)(2) and (3), to calculate their monthly disposable income according to 11 U.S.C. §707(b)(2)(A) and (B) by subtracting standard IRS expense deductions from their average monthly income received during the six months prior to the filing of their petition. After taking allowed deductions, Debtors' monthly disposable income on Form 22C was negative $1203.55.

Debtors submitted a Chapter 13 plan, which provided for monthly payments for 36 months. The payments would increase based on the cessation of 401(k) payments, and would consist of monthly payments of $402.32 for the first seven months, monthly payments of $881.18 for the next two months, and monthly payments of $1,178.43 for the following twenty-seven months. Under this plan, general unsecured creditors were to receive $30,321.65. (Appellants' Br., at 3.)

The Trustee objected to confirmation of Debtors' proposed plan on the grounds that the plan, which does not offer payment in full to unsecured creditors, should be extended to 60 months because the applicable commitment period pursuant to 11 U.S.C. § 1325(b)(4) for above-median debtors is five years. (R. at 28.) On December 16, 2009, the Bankruptcy Court held a confirmation hearing and heard oral argument regarding this issue. The Bankruptcy Court adjourned the hearing until January 27, 2009 to allow the parties to submit briefing on the issues. At the January 27, 2009 hearing, the Bankruptcy Court

sustained the Trustee's objections to confirmation, stating that the Court was not persuaded by the Debtors' additional case law to overrule its previous decision interpreting the "applicable commitment period," *In re Davis*, 348 B.R. 449 (Bankr. E.D. Mich. 2006), and that the Court found two recent opinions of the Eighth Circuit Court of Appeals and the Sixth Circuit Bankruptcy Appellate Panel persuasive. (Appellants' Ex. E, at 6.) The Bankruptcy Court adjourned the hearing to allow Debtors to file an amended Chapter 13 plan.

Debtors submitted an amended Chapter 13 plan, which provided for monthly payments for 60 months. The payments would consist of monthly payments of $402.32 for the first seven months, monthly payments of $881.18 for the next two months, and monthly payments of $1,178.43 for the following fifty-one months. Under this plan, general unsecured creditors would receive $58,603.97. (Appellants' Br. at 3.) On February 5, 2009, Debtors filed objections to their own amended plan. (R. at 45.) On February 14, 2009, the Bankruptcy Court issued an order confirming Debtors' amended plan over Debtors' objections. (R. at 47.) The Debtors' timely appeal of the Bankruptcy Court's order is now before the Court.

## II.   Jurisdiction

Appellate jurisdiction is conferred on this Court by 28 U.S.C. § 158(a)(1), which provides that "[t]he district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders, decrees . . . of bankruptcy judges . . . under Section 157 of this title." This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## III.   Standard of Review

This appeal raises solely questions of law, which this Court reviews *de novo*. *Westbanco Banke Barnesville v. Rafoth (In re Baker & Getty Fin. Serv., Inc.)*, 106 F.3d 1255, 1259 (6th Cir. 1997).

**IV.    Analysis**

This appeal concerns the interpretation of Section 1325 of the Bankruptcy Code, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). 11 U.S.C. § 1325(b)(1), as amended by BAPCPA, provides in relevant part:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan--
>
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.
>
> (2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended--
>
> (A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligations, that first becomes payable after the date the petition is filed; and
>
> (ii) for charitable contributions . . . ; and;
>
> (B) If the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.
>
> (3) Amounts reasonably necessary to be expended under paragraph (2), other than subparagraph (A)(ii) of paragraph (2), shall be determined in

>accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than--
>
>* * *
>
>(B) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or
>
>* * *
>
>(4) For purposes of this subsection, the "applicable commitment period"--
>
>>(A) subject to subparagraph (B), shall be--
>>
>>>(i) 3 years; or
>>>
>>>(ii) not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than--
>>>
>>>* * *
>>>
>>>>(II) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or
>>>
>>>* * *
>>
>>(B) may be less than 3 or 5 years, whichever is applicable under subparagraph (A), but only if the plan provides for payment in full of all allowed secured claims over a shorter period.

The phrase "current monthly income" in § 1325(b)(2) is defined as the average monthly income of the debtor from all sources during the six-month period preceding the filing of the petition. 11 U.S.C. § 101(10A).

Debtors contend that the Bankruptcy Court erred by concluding that: (1) the "applicable commitment period" under 11 U.S.C. § 1325(b)(1)(B) determines the length of a Chapter 13 plan rather than the dollar amount to be paid to unsecured creditors; and that (2) the "applicable commitment period" applies to Chapter 13 debtors with no "projected disposable income." The Trustee responds that: (1) this Court lacks jurisdiction because

5

Debtors do not have standing to appeal confirmation of their own amended plan; and that (2) the "applicable commitment period" dictates a plan length of 60 months for the above-median Debtors who, contrary to their assertions, do have "projected disposable income."

The Court begins with the threshold question of whether the Debtors have standing to appeal the Bankruptcy Court's confirmation of their own amended plan. The Sixth Circuit has noted that "[a]ppellate standing in bankruptcy cases is more limited than Article III standing or the prudential requirements associated therewith." *In re Troutman Enters., Inc.*, 286 F.3d 359, 364 (6th Cir. 2002). An appellant has standing to appeal a bankruptcy court order if he was "'directly and adversely affected pecuniarily by the order.'" *Id.* (quoting *Fidelity Bank, Nat'l Ass'n v. M.M. Group, Inc.*, 77 F.3d 880, 882 (6th Cir. 1996)). Under the "'person aggrieved' doctrine" standing is limited to "'persons with a financial stake in the bankruptcy court's order.'" *Id.* (internal citations omitted). "[A] person may only appeal a bankruptcy court order when it diminishes their property, increases their burdens, or impairs their rights." *Id.*

In *In re Zahn*, 526 F.3d 1140 (8th Cir. 2008), the Eighth Circuit held that a debtor had standing to appeal confirmation of her own amended Chapter 13 plan. Upon the Trustee's objection, the debtor in *Zahn* filed an amended plan increasing her total monthly income and, thereby, extending the plan length. *Id.* at 1141-42. The Eighth Circuit explained:

> Zahn was forced, over her express objection, to propose an amended plan. As the BAP noted, Zahn 'preferred her original plan.' Zahn amended her plan with provisions she believed were erroneous and not required by the Bankruptcy Code, in order to avoid dismissal. 'That a party may appeal from a judgment in his favor when there has been some error prejudicial to him, or he has not received all he is entitled to, has quite generally been held by the courts, and there is no sound reason otherwise.' The extended length of Zahn's plan—a consequence of the inclusion of her non-filing husband's IRA

6

> distributions—is material and prejudicial to Zahn. Zahn is thereby an aggrieved party.

*In re Zahn*, 526 F.3d at 1142 (internal citations omitted). The Court finds the Eighth Circuit's reasoning to be persuasive. The Bauds desired a plan length of 36 months and only submitted an amended plan of 60 months upon the Trustee's objection in order to avoid dismissal. The Bankruptcy Court's confirmation of their amended Chapter 13 plan resulted in the Bauds having to make monthly payments for an additional 24 months, at an added expense of $28,282.32. As such, the order confirming Debtors' amended plan increased Debtors' burden and "'directly and adversely'" affected them "'pecuniarily.'" *In re Troutman Enters., Inc.*, 286 F.3d at 364 (citing *Fidelity Bank, Nat'l Ass'n*, 77 F.3d at 882). The Court finds that they are "aggrieved parties" with appellate standing.

The Court now turns to the merits of Debtors' appeal. The Bankruptcy Court sustained the Trustee's objection that Debtors' original 36-month Chapter 13 plan did not satisfy 11 U.S.C. § 1325(b)(1)(B) because, as above-median debtors who were not paying their unsecured claims in full, the Bauds were required to provide payments over the entire applicable commitment period of five years. Debtors had contended that their original 36-month Chapter 13 plan satisfied the requirements of 11 U.S.C. § 1325(b) because the applicable commitment period does not determine plan length but is, instead, a multiplier in a formula used to determine the projected disposable income that Debtors must pay to unsecured creditors. The Bankruptcy Court incorporated its decision in *In re Davis*, 348 B.R. 449, 458 (Bankr. E.D. Mich. 2006), in which it held that:

> [A] debtor's applicable commitment period, as determined by §1325(b)(4), does impose a minimum *length* of plan rather than a minimum *amount*, by application of § 1325(b)(1)(B) to debtors whose Chapter 13 plans do not pay

7

>unsecured creditors in full and whose plans are the subject of an objection by a trustee or an unsecured creditor.

(Appellants' Ex. E, at 6.) Debtors contend that the Bankruptcy Court's conclusion was erroneous. The Court agrees with the Bankruptcy Court that "applicable commitment period" is temporal in nature, mandating a minimum plan length for the payment of projected disposable income. The Court finds, however, that "applicable commitment period" does not apply to debtors with no projected disposable income.

The Court begins its analysis with the language of the statute, itself. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989). "'When the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'" *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) (internal citations omitted). Section 1325(b)(1)(B) provides that if a trustee or holder of an unsecured claim objects, a plan may not be confirmed unless "the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors under the plan." Section 1325(b)(4) defines the "applicable commitment period" as 3 years for below-median debtors and 5 years for above-median debtors.

"Two threshold requirements are apparent from this language." *Musselman v. eCast Settlement Corp.*, 394 B.R. 801 (Bankr. E.D. N.C. 2008). In order for this subsection to apply, a debtor must have "unsecured creditors" and "projected disposable income." *Id.* (noting that "if none of the subsection's provisions are relevant to a debtor's situations, then that subsection does not apply"); *see also In re Davis*, 392 B.R. 132, 146-47 (Bankr. E.D. Pa. 2008) (likening application of 'applicable commitment period' to debtors with no

projected income to absurd result of requiring five-year plan for debtors with no unsecured creditors); *In re Green*, 378 B.R. 30, 39 (Bankr. N.D. N.Y. 2007) (noting that "it simply makes no sense to invoke §1325(b)(1)(B) and its mandates by pointing to a negative number which will not be received").

In order to hold that Debtors are required to propose a 60-month plan even though they have no projected disposable income, the Court would have to conclude that Section 1325(b)(4) constitutes an independent plan-length requirement. But the phrase "For the purposes of this subsection" in §1325(b)(4) shows that the term "applicable commitment period" in that subsection and the requirement of 3 or 5 years is "exclusively linked" to §1325(b)(1)(B). *In re Alexander*, 344 B.R. 742, 751 (Bankr. E.D. N.C. 2006). As the Ninth Circuit explained:

> There is no language in the Bankruptcy Code that requires all plans to be held open for the 'applicable commitment period.' Section 1325(b)(4) does not contain a freestanding plan length requirement; rather, its exclusive purpose is to define 'applicable commitment period' for purposes of the § 1325(b)(1)(B) calculation. Subsection (b)(4) states 'For purposes of this subsection, the 'applicable commitment period' . . . shall be . . . not less than 5 years' for above-median debtors. Subsection (b)(1)(B) states that 'the debtor's 'projected disposable income' to be received in the 'applicable commitment period' . . . will be applied to make payments under the plan.' When read together, only 'projected disposable income' has to be paid out over the 'applicable commitment period.' When there is no 'projected disposable income,' there is no 'applicable commitment period.'

*Kagenveama v. Maney*, 541 F.3d 868, 876 (9th Cir. 2008); *see also Musselman*, 394 B.R. at 814 (noting that section 1325(b)(1)(B) "delineates the situations in which the definition of 'applicable commitment period' set forth in § 1325(b)(4) will apply"); *In re Brady*, 361 B.R. 765, 777 (Bankr. D. N.J. 2007) (holding that 'applicable commitment period' "must . . . be

read in the context of section 1325(b)(1)(B)" and is "irrelevant" for debtors with no projected disposable income).

Several bankruptcy courts also point to 11 U.S.C. § 1322(d), which sets a *maximum* Chapter 13 plan length of 5 years for all above-median debtors and note that "if Congress had intended to mandate the minimum chapter 13 plan length without regard to whether a debtor had unsecured creditors or projected disposable income, it could have easily amended section 1322(d) to so state." *In re Davis*, 392 B.R. at 148; *cf. In re Alexander*, 344 B.R. at 751. The Court finds this reasoning persuasive. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) (instructing courts to consider "the broader context of the statute as a whole" in assessing "[t]he plainness or ambiguity of statutory language").

In his dissent in *Kagenveama*, Judge Bea contends that above-median debtors with no projected disposable income are still bound by a five-year 'applicable commitment period.' Judge Bea explains that requiring debtors to remain in the plan for 3 or five years provides unsecured creditors with a longer period of time within which to file for plan modification under 11 U.S.C. § 1329 should the debtors' financial situation improve. *Kagenveama*, 541 F.3d at 877-81 (Bea, J., concurring in part and dissenting in part). But, as the majority noted:

> [T]here is nothing in the Bankruptcy Code that requires a debtor with no 'projected disposable income' to propose a five-year plan. We must enforce the plain language of the Bankruptcy Code as written. We may not make changes to the plain language of the Bankruptcy Code based on policy considerations because that is the job of Congress . . . Because Congress directly addressed the modification of plans in other sections, we need not transform § 1325 into a plan modification tool.

*Kagenveama*, 541 F.3d at 877. Moreover, countervailing policy considerations—such as providing Chapter 13 debtors with a "fresh start"—are served by not requiring debtors to

remain in Chapter 13 when they have no required payments to unsecured creditors. *In re Davis*, 392 B.R. at 146.

Because the Bauds have no projected disposable income, the 'applicable commitment period' requirement "simply does not come into play." *In re Alexander*, 344 B.R. at 751. "Any money other than 'projected disposable income' that [Debtors] propose[] to pay does not have to be paid out over the 'applicable commitment period,'" and so they were not required to propose a five-year plan. *Kagenveama*, 541 F.3d at 876.

The Trustee argues in the alternative that Debtors *do* have "projected disposable income," and so must propose a five-year plan. The parties essentially dispute the meaning of the phrase "projected disposable income" in 11 U.S.C. § 1325(b)(1)(B). Debtors interpret "projected disposable income" to mean "disposable income," as defined by § 1325(b)(2), projected over the "applicable commitment period." By this definition, the Debtors' projected disposable income is negative $1203.55 per month, as shown on their Form 22C. The Trustee contends that "projected disposable income" under § 1325(b)(1)(B) is not necessarily the same as "disposable income" as calculated under § 1325(b)(2). The Trustee points to Debtor's current monthly income of $402.32, as shown on their Schedules I and J, as proof that Debtors do, in fact, have projected disposable income.[1]

---

[1] The Bankruptcy Court did not make explicit whether it was sustaining Trustee's objection and denying confirmation of Debtors' plan because it concluded that "applicable commitment period" *does* apply to Debtors with negative disposable income or because it concluded that Debtors did not actually have *negative* disposable income. In light of the fact that the Bankruptcy Court noted that it found *In re Frederickson* and *Petro* "helpful and supportive"— cases addressing the meaning of "projected disposable income"— this Court assumes it was the latter. (Appellants' Ex. E, at 6.)

11

Prior to BAPCPA, a court would ensure that a debtor was devoting his disposable income to the plan by looking at the debtor's monthly income at the time of filing, as shown on Schedule I, and assessing whether the actual expenses that he was deducting, as shown on Schedule J, were reasonably necessary for his support. *In re Kolb*, 366 B.R. 802, 804-05 (Bankr. S.D. Ohio 2007). Determining whether expenses were 'reasonably necessary' "was dependent on each debtor's individual facts and circumstances," and "[t]his amorphous standard produced determinations of a debtor's 'disposable income' that varied widely among debtors in similar circumstances." *Kagenveama*, 541 F.3d at 873 n.2.

BAPCPA replaced this definition of 'disposable income' with a "formulaic approach for above median debtors." 11 U.S.C. § 1325(b)(1), as amended by BAPCPA, provides that upon objection, a debtor's Chapter 13 plan that does not provide payment in full to unsecured creditors may only be confirmed if:

> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.
>
> (2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor . . . less amounts reasonably necessary to be expended . . .

11 U.S.C. § 1325(b)(1)-(2). The term "current monthly income" in § 1325(b)(2) is defined as the average monthly income of the debtor from all sources over the six-month period preceding the filing of the petition. 11 U.S.C. § 101(10A)(A). A debtor is now required to file along with Schedules I and J, a statement of current monthly income on Form 22C. For an above-median debtor, "amounts reasonably necessary to be expended" "shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2)." 11 U.S.C.

12

§ 1325(b)(3). 11 U.S.C. § 707(b)(2) substitutes IRS standard expense deductions for the debtor's *actual* expenses recorded on Schedule J. The issue before this Court is how "projected disposable income," which is not defined in the Bankruptcy Code, should be interpreted in light of the recently amended definition of "disposable income."

The Ninth Circuit, as well as a number of bankruptcy courts, have held that the plain meaning of § 1325(b) dictates a "mechanical" approach whereby "projected disposable income" is calculated simply by projecting "disposable income," as defined in subsection (b)(2), over "the applicable commitment period." *Kagenveama*, 541 F.3d at 872; *see also, e.g.*, *In re Musselman*, 394 B.R. at 807-13; *In re Green*, 378 B.R. at 35-39; *In re Kolb*, 366 B.R. 802 (Bankr. S.D. Ohio 2007); *In re Rotunda*, 349 B.R. 324 (Bankr. N.D. N.Y. 2006); *In re Alexander*, 344 B.R. at 748-50. The Ninth Circuit held that because the term "disposable income" appears in only two places in section 1325 — in the phrase "projected disposable income" in section 1325(b)(1)(B) and in the definition of "disposable income" in section 1325(b)(2)—treating "projected" as "simply a modifier of the defined term 'disposable income,'" gives meaning to every word of the statute. *Kagenveama*, 541 F.3d at 872-73. The Ninth Circuit explained:

> The substitution of any data not covered by the § 1325(b)(2) definition in the 'projected disposable income' calculation would render as surplusage the definition of 'disposable income' found in § 1325(b)(2). There can be no reason for § 1325(b)(2) to exist other than to define the term 'disposable income' as used in § 1325(b)(1)(B). 'If 'disposable income' is not linked to 'projected disposable income' then it is just a floating definition with no apparent purpose.'

*Id.* at 872-73 (quoting *In re Alexander*, 344 B.R. at 749). Courts adopting the mechanical approach also note that "projected disposable income" was linked to the "disposable income" calculation prior to BAPCPA, and reason that "[a]ny change in how 'projected

13

disposable income' is calculated [should] only reflect[] the changes dictated by the new 'disposable income' calculation." *Id.* at 873; *see also Kolb*, 366 B.R. at 816 n.20.

By contrast, the majority of courts to have addressed the issue have held that "projected disposable income" should not be mechanically based on the historical "disposable income" calculation. Some courts adopting this "forward-looking" approach conclude that "projected disposable income" bears little or no relationship to the "disposable income" calculation, which is based on pre-petition income and expenses. *See, e.g., In re Hardacre*, 338 B.R. 718 (Bankr. N.D. Tex. 2006); *In re Riggs*, 359 B.R. 649 (Bankr. E.D. Ky. 2007). Other courts treat "disposable income," as shown on Form 22C, as the presumptively correct calculation of "projected disposable income" but permit this presumption to be rebutted with evidence of a change in the debtor's circumstances that renders the historical figure an inaccurate predictor of disposable income during the pendency of the plan. *See, e.g.*, *In re Lasowski*, __F.3d__, No. 08-2017, 2009 WL 2448246 (8th Cir. Aug. 12, 2009); *In re Turner*, __F.3d__, No. 08-2163, 2009 WL 2136867 (7th Cir. July 20, 2009); *In the Matter of Nowlin*, __F.3d__, No. 08-20066, 2009 WL 2105356 (5th Cir. July 17, 2009); *In re Lanning*, 545 F.3d 1269 (10th Cir. 2008); *In re Frederickson*, 545 F.3d 652 (8th Cir. 2008); *In re Thomas*, 395 B.R. 914 (6th Cir. B.A.P. 2008); *In re Petro*, 395 B.R. 369 (6th Cir. B.A.P. 2008); *In re Gonzalez*, 388 B.R. 292 (Bankr. S.D. Tex. 2008); *In re Davis*, 392 B.R. 132 (Bankr. E.D. Pa. 2008); *In re Jass*, 340 B.R. 411 (Bankr. D. Utah 2006). The Court finds the reasoning of the courts adopting the "forward-looking" "presumption" approach to be persuasive for several reasons.

First, by equating "projected disposable income" with "disposable income," the mechanical approach fails to give effect to the word, "projected." As the *Hardacre* court explained:

> The court is to presume that 'Congress acts intentionally and purposefully when it includes particular language in one section of a statute but omits it in another...' While Congress could have used the phrase 'disposable income' in section 1325(b)(1)(B) and thereby invoked its definition as set forth in section 1325(b)(2), it chose not to do so. Consequently, Congress must have intended 'projected disposable income' to be different than 'disposable income.'

*In re Hardacre*, 338 B.R. at 723 (internal citations omitted). The Court agrees with the Fifth Circuit that "the independent definition of 'projected,'"—"'to calculate, estimate, or predict (something in the future), based on present data or trends'"—necessitates "a forward-looking view" of 'projected disposable income' "grounded in the present via the statutory definition of 'disposable income premised on historical data.'" *Nowlin*, 2009 WL 2105356, at *3 (internal citations omitted).

Second, as other courts have pointed out, the mechanical approach fails to give effect to section 1325(b)(1)(B)'s inclusion of the phrases, "to be received in the applicable commitment period," "as of the effective date of the plan," and "will be applied to make payments," which all "suggest[] consideration of the debtor's actual financial circumstances" as of plan confirmation and in the future. *In re Lanning*, 545 F.3d at 1279-80; *Nowlin*, 2009 WL 2105356, at *4. Focusing solely on a debtor's pre-petition income under the "disposable income" calculation renders these phrases "superfluous." *In re Lanning*, 545 F.3d at 1280.

By permitting courts to take into account evidence of changed circumstances affecting or likely to affect a debtor's disposable income post-confirmation, the "forward-looking"

15

"presumption" approach gives effect to the statute's future-oriented words and phrases. While "projected disposable income" will often be the same as the calculation of "disposable income" based on pre-petition income, discrepancies will exist when a debtor's income has substantially increased or decreased around the time of filing or is reasonably certain to substantially increase or decrease in the future. *In re Petro*, 395 B.R. at 376 (debtors' 'projected disposable income' calculation may be rebutted by evidence of unemployment during six months prior to filing of petition (*id.* at 372-73)); *see also Nowlin*, 2009 WL 2105356, at *1, *8 (affirming denial of confirmation where debtor's 'disposable income' calculation included 401(k) loan payments scheduled to cease in two years); *In re Lanning*, 545 F.3d at 1270-71 ('disposable income' calculation produced inaccurate 'projected disposable income' because debtor had received buyout from employer during six-month pre-petition period); *In re Turner*, 2009 WL 2136867, at *1, *7 (Trustee could rebut presumption of Form 22C's accuracy with evidence that debtor took deduction for house that he planned to surrender after plan confirmation).

The Court rejects, however, the approach taken by some courts adopting a "forward-looking" interpretation whereby a debtor's "projected disposable income" is determined by looking *solely* at net income at the time of filing as shown on Schedules I and J. *See*, *e.g.*, *In re Riggs*, 359 B.R. at 652-53. Divorcing "projected disposable income" from the "disposable income" calculation ignores the plain language of section 1325(b) linking the two phrases and would render the amended section 1325(b)(2) "just a floating definition with no apparent purpose." *In re Alexander*, 344 B.R. at 749; *see also Kagenveama*, 541 F.3d at 872-73. By contrast, the "forward-looking" "presumption" view gives effect to future-

16

oriented words in section 1325(b) while remaining grounded in the amended 'disposable income' calculation. As the Fifth Circuit explained:

> [W]e are not persuaded that considering a present or reasonably certain future change of circumstances, and adjusting the debtor's projected disposable income accordingly, renders § 1325(b)(2)'s definition of 'disposable income' surplusage . . . the mechanical projection of the debtor's statutorily defined 'disposable income' serves as the starting point, subject to rebuttal by appropriate evidence of changed circumstances. Thus, the statute's definition is central to the court's task of projecting disposable income.

*Nowlin*, 2009 WL 2105356, at *6.[2]

In this case, the Trustee has presented no evidence of changed circumstances to rebut the presumption that Debtors' "disposable income" as shown on Form 22C is also Debtors' "projected disposable income." *See, e.g.*, *In re Davis*, 392 B.R. at 41-42 (Trustee failed to rebut presumption of Form 22C computation when "no evidence offered that the debtors' pre-bankruptcy average income and expenses have improved recently in any material aspect"); *In re Jass*, 340 B.R. at 419 (debtors failed to rebut presumption that "projected disposable income" is number shown on Form 22C when wife did not testify as to how husband's recent hospitalization would affect their projected income and expenses). The Trustee merely points to the fact that the Debtor's net monthly income at the time of filing, as shown on Schedules I and J, was $402.32. But the Court declines to find a positive net income at the time of filing, as shown on Schedules I and J, sufficient to rebut the presumption of Form 22C's accuracy.

---

[2] The Court acknowledges that this approach reads a presumption into the statute, "requir[ing] a certain disregard of the notion that Congress knows how to create a presumption when it intends one." *In re Lanning*, 545 F.3d at 1279 (citing *In re Kagenveama*, 541 F.3d at 874).

17

Congress revised the 'disposable income' test to employ a formula to determine what expenses are reasonably necessary and to base projected disposable income on a debtor's income during the six months prior to filing rather than income at filing. As such, BAPCPA "represents a deliberate departure from the old 'disposable income' calculation." *Kagenveama*, 541 F.3d at 874. In this case, the difference between Schedules I and J and the Form 22C calculation could be attributable to the fact that current monthly income under the new definition excludes Debtors' social security income, *see In re Kibbe*, 361 B.R. 302, 311-12 (1st Cir. B.A.P. 2007), or Debtors' actual expenses could be less than the permissible IRS deductions used in the amended "disposable income' test. "[W]e are bound by the definition of "disposable income" provided in § 1325(b)(2)(B)," and allowing Schedules I and J to rebut the presumption of Form 22C's accuracy would override the changes imposed by BAPCPA. *Kagenveama*, 541 F.3d at 874; *see also In re Davis*, 392 B.R. at 140-41 (noting that "'[i]f the existence of net monthly income in Schedules I and J, by itself, were determinative of PDI . . . the elaborate statutory means test methodology for determining PDI required by § 1325(b)(3), commonly viewed as the cornerstone of the BAPCPA reforms, would be nullified" (internal citations omitted)).

That Debtors show surplus income on their Schedules I and J that they are not required to commit to their plan "appears to be at odds with the Congressional intent in enacting BAPCPA to ""ensure that those who can afford to repay some portion of their unsecured debts [be] required to do so.'"" *In re Brady*, 392 B.R. at 774 (quoting *In re Hardacre*, 338 B.R. at 725 (quoting 151 Cong. Rec. S 2470 (March 10, 2005))); *see also In re Frederickson*, 545 F.3d at 658-59 (permitting positive net income on Schedules I and J to rebut presumption because doing so effectuates congressional intent to require above-

median debtors to pay more of their unsecured debt). But "Congress established very clearly the fixed formulas for identifying the debtors who can afford to repay their unsecured debts" and "[t]he statute must be applied according to its terms." *In re Brady*, 392 B.R. at 774.

Moreover, as the court in *Brady* noted:

> Absent a known or expected change in the debtors' income and/or expenses, Schedules I and J only provide a different snapshot of the debtors' financial circumstances at the time of the filing of the petition, and do not reflect more accurately than any other formula the debtors' anticipated income going forward during the Chapter 13 plan.

*In re Brady*, 392 B.R. at 774-75. Congress was permitted to decide that a debtor's income during the six months prior to filing of the petition is a more accurate predictor of projected disposable income than income at the time of filing. Similarly, Congress was permitted to conclude that replacing judicial discretion regarding the reasonableness of expenses with standard IRS expense deductions would result in a more accurate or more uniform method of calculating projected disposable income. The Court will not override these legislative decisions.

Since the Trustee has not rebutted the presumption with evidence of changed circumstances, the Court derives Debtors' "projected disposable income" from Form 22C. In this case, that figure is negative $1203.55. Because Debtors' do not have "projected disposable income," they were not required to propose a 60-month Chapter 13 plan.[3]

**V.     Conclusion**

---

[3] If Debtors' income changes after confirmation, the Trustee or an unsecured creditor is free to seek modification of the plan pursuant to 11 U.S.C. § 1329. *Kagenveama*, 541 F.3d at 877.

For the foregoing reasons, the Bankruptcy Court's February 14, 2009 order confirming Debtors' amended Chapter 13 plan is REVERSED and the case is REMANDED to the Bankruptcy Court to allow Debtors to modify their amended Chapter 13 plan in a manner consistent with this opinion.


                        s/Nancy G. Edmunds
                        Nancy G. Edmunds
                        United States District Judge

Dated:  September 3, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 3, 2009, by electronic and/or ordinary mail.

                        s/Carol A. Hemeyer
                        Case Manager